DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES "CHUCK" WOOD,<br><br>Plaintiff,<br><br>v.<br><br>FLUOR IDAHO, LLC,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Charles "Chuck" Wood, by and through his counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Fluor Idaho, LLC, a Delaware limited liability company, complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Charles "Chuck" Wood ("Plaintiff") is a male citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

5. Defendant Fluor Idaho, LLC (the "Defendant") is a Delaware limited liability company, with its principal place of business in Bonneville County, Idaho.

6. At all times relevant to this Complaint, Defendant regularly employed twenty or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; 42 U.S.C. § 12101, *et seq.*; and 29 U.S.C. § 621, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. On or about March 9, 2004, Plaintiff began working for Defendant's predecessor, British Nuclear Fuels Ltd., at the Idaho National Laboratory Site ("INL"). Plaintiff worked as an Operation Technician at the Treatment Facility ("TF") of the Advanced Mixed Waste Treatment Program ("AMWTP").

9. Plaintiff had an excellent performance record in his job as an Operation Technician.

10. In late 2015, when Plaintiff was employed by Defendant's predecessor, Idaho Treatment Group ("ITG"), Plaintiff injured his back at work.

11. Plaintiff's back injury resulted in the need for medical leave in order to treat the injury. Plaintiff went on medical leave in March 2016.

12. In or around June 2016, while Plaintiff was out on leave, Defendant took over the contract at the TF and became Plaintiff's employer.

13. On or about July 13, 2016, Plaintiff returned to work from medical leave with temporary restrictions, including no sitting or standing for extended periods of time, and no lifting, pushing or pulling anything 50 pounds or more, and limited bending and twisting.

14. After Plaintiff returned to work, Plaintiff's supervisor, Brody Tripp ("Tripp"), frequently assigned Plaintiff to job tasks which violated Plaintiff's restrictions, including job tasks which required pushing and pulling drums weighing 500 pounds or more, as well as job tasks which required him to sit or stand for long periods of time.

15. Plaintiff raised concerns about the lack of accommodation to management, but nothing was done.

16. In March 2017, when Plaintiff was walking by Production Manager Jeremy Hampton's ("Hampton") office, Hampton called Wood into his office. Hampton told Wood that he saw him limping. Wood responded that he was still in a lot of pain. Hampton then asked Wood if he had any idea when he would retire. At the time, Wood stated he thought he might retire around his birthday. Hampton replied, "So, we need to keep you healthy until then."

17. On or around April 11, 2017, Plaintiff met with Assistant Production Manager Chad Jardine ("Jardine") and Hampton. They informed Plaintiff that his super-compactor certification expired. Hampton told Plaintiff that the company would not "take the hit for this," implying that it was Plaintiff's fault that he had not yet obtained recertification.

18. Plaintiff explained that he had been trying to get certified but that Tripp had not put him on the super-compactor long enough to log the number of hours he needed to complete certification. Jardine stated he would speak with Tripp and gave Plaintiff 90 days to complete his certification.

19. The next day, Jardine asked Wood to meet with him. Jardine stated to Wood, "Look, we are friends, and have been buds for a long time. Any idea when you might retire?" Wood explained that though he had previously planned to retire on his birthday, he had just had been diagnosed with squamous cell cancer, so his retirement plans had to be put on hold because he needed his insurance and wanted to keep working until he completed treatment and his cancer was in remission. Wood also disclosed that he would turn 70 at his next birthday, and Jardine seemed shocked at Wood's age.

20. Wood logged hours on the super-compactor to obtain his certification. However, Plaintiff's certification trainers were not signing off on his certification paperwork. Further, Tripp would not allow Wood to work "crit cleanouts" which were required in order to complete the Fissile Tracking portion of his certification.

21. Despite Tripp's failure to schedule Wood appropriately so he could complete the certification packet, Wood had completed roughly 75% of the qualification packet by early June. However, on June 6, 2017, Jenny Cummins ("Cummins"), who was one of Plaintiff's trainers, told Wood he had the wrong qualification packet.

22. Plaintiff spoke with Becky Whitacre ("Whitacre") in HR the next day, as well as Holly Clark ("Clark"), also in HR, who confirmed that Plaintiff did have the correct qualification packet. Wood also showed Clark the signatures on his qualification packet.

23. Wood informed Cummins he confirmed with HR he had the correct qualification packet. Cummins stated that she would get Plaintiff signed off and requalified with no problem.

24. On or around the evening of June 13, 2017, Wood received a call from Whitacre who instructed him not to go to his normal job location the next day, and to instead meet with Jardine and HR employee John Morgan ("Morgan") at Fluor's Idaho Falls office at 9:00 a.m. the next day.

25. On or about June 14, 2017, Wood arrived at Fluor's Idaho Falls office at 8:45 a.m., where he found Jardine and Morgan waiting at the front doors. Jardine and Morgan took Wood to Jardine's office, and began the conversation they were there to terminate Wood's employment.

26. Jardine handed Wood a termination letter, and Morgan handed Wood separation paperwork and asked him to sign the document and surrender his badge. The termination letter stated that Wood was being terminated for failure to recertify on the super-compactor.

27. On or about July 7, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Idaho Human Rights Commission ("IHRC"), asserting age and disability discrimination against Defendant.

28. On or about March 8, 2019, Plaintiff received his Notice of Right to Sue.

29. Plaintiff has exhausted his administrative remedies.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
**(Failure to Accommodate)**

30. Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff was disabled within the meaning of the ADAAA because he had an actual disability as a result of his back injury which impacted his musculoskelatal system.

32. Plaintiff had a record of disability due to his back injury, medical treatment, and work restrictions regarding his back injury.

33. Plaintiff's disability substantially limited his major life activities and/or major bodily functions, including the ability to sit or stand for long periods of time, lift, push, and pull, bend and twist, and walk.

34. Plaintiff's disability required that Plaintiff take time off for treatment to attempt to repair Plaintiff's back injury.

35. Plaintiff's disability also required that Plaintiff perform no and/or light duty work.

36. Plaintiff was a qualified individual able to perform the essential functions of his job with or without reasonable accommodations.

37. Defendant failed to accommodate Plaintiff by failing to abide by his work restrictions upon Plaintiff's return to work. Defendant also failed to accommodate Plaintiff by not providing him additional time to complete his qualifications.

38. Defendant took adverse action against Plaintiff by assigning Plaintiff to job tasks which did not comply with his medical restrictions when he returned to work, failing to assign him work so he could meet his qualifications, and terminating his employment.

39. As a direct and proximate result of Defendants actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

Case 4:19-cv-00185-JMM     Document 1     Filed 05/22/19     Page 7 of 10

## COUNT TWO
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
**(Failure to Accommodate)**

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

41. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by failing to accommodate Plaintiff's disabilities.

42. As a direct and proximate result of Defendant actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
**(Disability Discrimination)**

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as though fully set forth herein.

44. At all times relevant hereto, Plaintiff had a disability as defined by the ADAAA.

45. Plaintiff was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation could perform the essential functions of his job.

46. Defendant took adverse action against Plaintiff based upon his disability including failing to allow him enough time to complete his qualification certification, failing to schedule him in a manner that would have allowed him to complete his qualification certification, and terminating Plaintiff's employment.

47. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT FOUR
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Disability Discrimination)

48. Plaintiff realleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff by discriminating against Plaintiff based upon his disability.

50. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT FIVE
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (Age Discrimination)

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. At the time Defendant terminated Plaintiff's employment, Plaintiff was 69 years old.

53. Plaintiff performed his job satisfactorily.

54. On information and belief, Plaintiff was replaced by someone who was substantially younger with less experience than Plaintiff.

55. Defendant terminated Plaintiff's employment because of his age or would not have terminated Plaintiff but for his age.

56. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to him, including reinstatement.

57. Defendant's conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT SIX
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
(Age Discrimination)

58. Plaintiff realleges and incorporates by reference paragraphs 1 though 57 as though fully set forth herein.

59. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by subjecting Plaintiff to discrimination on the basis of age.

60. Defendant terminated Plaintiff's employment because of his age or used his age as a motivating factor in its decision.

61. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered and will continue to suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to damages, in an amount to be proven at trial, as wells as any equitable remedies available to him, including reinstatement.

## ATTORNEY'S FEES

62. As a further direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 29 U.S.C. § 216(b), 42 U.S.C. § 1981(b), 42 U.S.C. § 2000e-5(k) and Idaho Code § 12-120 and 12-121.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendant as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2. For any equitable remedies available to him, including reinstatement;

3. For statutorily available costs and attorney's fees;

4. For prejudgment interest on all amounts claimed; and

6. For such other and further relief as the Court deems just and proper.

DATED this 22nd day of May, 2019.

       /s/
Amanda E. Ulrich, Esq.
Casperson Ulrich Dustin PLLC

C:\Users\Amanda\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\AEU\19753 Wood\Pleadings\Complaint.wpd:dg

10   –   COMPLAINT AND DEMAND FOR JURY TRIAL